IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) Criminal Action No. 7:13-cr-09 |
| v. | ) |
| | ) |
| PAUL TRAXEL, | ) By: Michael F. Urbanski |
| | ) Chief United States District Judge |
| Defendant | ) |

**MEMORANDUM OPINION**

On April 30, 2019, defendant Paul Traxel filed a motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255. ECF No. 131. The government filed a motion to dismiss Traxel's petition on July 29, 2019, ECF No. 142, to which Traxel responded on September 30, 2019. For the reasons stated below, the court will **GRANT** the government's motion and **DISMISS** Traxel's petition.

**I. BACKGROUND**

On January 24, 2013, Traxel was indicted on five counts of distributing controlled substances and four firearm counts following a months-long investigation into his drug distribution activities. ECF No. 19. On November 4, 2013, Traxel entered into a Rule 11(c)(1)(C) plea agreement in which he agreed to plead guilty to two counts of distributing a mixture or substance containing a detectable amount of 1,4 Butanediol, a controlled substance analog, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Counts 3 and 6); and one count of possessing a firearm in furtherance of a drug trafficking crime and using and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count 8). He pled guilty the same day. ECF Nos. 70, 71, 72.

On March 10, 2014, Traxel was sentenced to 60 months each on Counts 3 and 6, to run concurrently, and to 60 months on Count 8, to run consecutively. The remaining counts were dismissed. ECF No. 79 at 2. On December 17, 2018, Traxel moved to reduce his sentence under Hughes v. United States, 138 S.Ct. 1765 (2018). ECF Nos. 122, 126. The court granted his motion on April 3, 2019 and reduced Traxel's sentence to 108 months, consisting of 48 months on Counts 3 and 6 to run concurrently and 60 months on Count 8 to run consecutively. ECF No. 129.

Traxel's § 2255 motion is based on the participation of Officer Craig Frye in the investigation that led to the charges filed against him. In April 2018, four years after Traxel was convicted and sentenced, the government filed a motion seeking disclosure of grand jury materials and potential impeachment materials regarding Officer Frye. The court granted the motion on May 16, 2018. ECF No. 114. Traxel's motion recounts much of the information disclosed about Frye, as does the government's motion to dismiss.

The complaints about Officer Frye included concerns over not following proper procedures and protocols for handling informants and drug information, making disrespectful and offensive comments about women and minority groups, making false statements in court proceedings, and not reporting expunged arrest and charge information. Based on this claimed misconduct, a Roanoke County Assistant Commonwealth's Attorney decided not to sponsor Frye's testimony in any further cases unless the testimony was corroborated by other evidence. Also, the United States Attorney determined that Frye would no longer be permitted to testify as a government witness. None of the undisclosed claimed misconduct was related to Traxel's case.

Given the above revelations about Frye, Traxel argues that he should be allowed to withdraw his guilty plea on the charges brought against him. He claims that Frye played a critical role in securing the charges and asserts that he would not have pled guilty had he known about the information bearing on Frye's credibility. However, a review of the record indicates that while Frye was involved in the investigation, he was never the only officer working on the case and that, as described below, his actions were overseen by multiple officers.

In 2011, agents working for the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) began their investigation into Traxel's drug distribution activities. PSR, ECF No. 125 at ¶ 4. From August 8, 2011 through November 1, 2012, Traxel participated in six controlled buys of drugs. Frye was a Task Force Officer (TFO) with the ATF and participated in some of the buys.

On August 8, 2011, Traxel met a confidential informant (CI) and sold the CI two bottles of testosterone cypionate for $380. Testosterone cypionate, an anabolic steroid, is a synthetic version of the naturally produced testosterone hormone and is a schedule III drug. PSR, ECF No. 125 at ¶ 4, 5. ATF Roanoke Special Agent Keith Teehan supervised the CI during the controlled buy, and searched him for currency, contraband, and firearms. Frye gave the CI $400 in official government funds and equipped the CI with a wireless transmitter. The buy was monitored by Frye, ATF agents Mike Maddy and Sandy Hines, and Special Agent Chris Cummings, both visually and via the wire transmitter. Frye confirmed that Traxel was the person who sold the drugs to the CI. Rep't of Investigation prepared by Keith Teehan,

ECF No. 142-1. Count 1 of the indictment was based on this buy but was dismissed as part of the plea agreement. Indictment, ECF No. 19 at 1; Plea Agrm't, ECF No. 71 at 1-2.

On January 6, 2012, Traxel met the CI in Norfolk, Virginia and sold the CI six 25 milliliter bottles of steroids and a plastic bottle containing 135.7 grams of liquid containing 1,4 Butanediol, a recreational drug that is considered a controlled substance analog of gama-hydroxybutric acid (GHB), which acts as an intoxicant and has been labeled a "date rape" drug. The steroids were identified as testosterone enanthate, which is an anabolic steroid and Schedule III drug, and trenbolone enanthate, a steroid and Schedule III drug. PSR, ECF No. 125 at ¶ 4, 6. Frye was involved in this buy, but it did not form the basis of any of the charges against Traxel, presumably because it was alleged to have occurred in another jurisdiction.

On June 15, 2012, Frye supervised the CI during a controlled buy of GHB from Traxel. Frye was assisted by Special Agent Tom Gallagher, Roanoke Police Officers Mike Maddy, Bill Fike, Chris Atkins, Kelly Jennings, and Michael Nedd. Frye and Gallagher met with the CI prior to the buy and Frye searched the CI for currency, contraband, and firearms and then equipped the CI with a wireless transmitter which contained a digital recorder. Other officers searched the CI's vehicle for the same items and equipped the vehicle with a repeater. Frye gave the CI $3,000 in government funds to complete the transaction. After negotiations between Traxel and the CI via text, the CI met with Traxel and obtained a gallon of clear liquid, later determined to be GHB, in exchange for the $3,000 in government funds. Gallagher, Atkins, Fike, and Nedd were already at the meeting location when the CI arrived, and Frye, Maddy, and Jennings followed the CI to the meeting location. After the buy, the CI released the gallon container to Frye who maintained care and custody of it until it was secured

in a temporary locker at the ATF Roanoke, Virginia field office, as witnessed by Agent Gallagher. Rep't of Investigation prepared by Frye, ECF No. 142-2. Count 2 of the indictment was based on this buy but was dismissed as part of the plea agreement. Indictment, ECF No. 19 at 1. Plea Agrm't, ECF No. 71 at 1-2.

On July 18, 2012, Teehan supervised the CI during a controlled purchase of 2 gallons of GHB and a firearm from Traxel. Teehan was assisted by ATF agents Mike Cilento, Craig Chillcott, Special Agent Chris Cummings, Investigator Chris Crawford, Gallagher, and Hines. Frye is not listed in the report as participating in this buy. Rep't of Investigation, ECF No. 142-3. Counts 3, 4, and 5 were based on this buy. Counts 4 and 5 were dismissed and Traxel pled guilty to Count 3. Indictment, ECF No. 19 at 2-3; Plea Agrm't, ECF No. 71 at 1-2.

On July 26, 2012, Teehan supervised the CI during a controlled buy of two gallons of GHB and a firearm from Traxel. Teehan was assisted by Cilento, Gallagher, ATF Special Agents Billy Cunningham, Doug Moore, Hines, Chillcott, Cummings, and Frye. Frye participated in the buy by searching the CI's vehicle and equipping the CI with a wireless transmitter which contained digital recorders. At the buy location, Traxel exchanged the suspected GHB and a firearm for $3,500 in government funds. All participating law enforcement officers monitored the exchange both visually and via the wire transmitter and audio recordings of the transaction were made on the digital recorder possessed by the CI. After the transaction, Frye recovered the wire transmitter and digital recorder from the CI and searched him with negative results. The CI told Frye that Traxel had approximately one gallon of suspected GHB remaining in the rear of the vehicle. Rep't of Investigation, prepared by Keith Teehan, ECF No. 142-4. Counts 6, 7, and 8 were based on this buy. Count 7 was

dismissed and Traxel pled guilty to Counts 6 and 8. Indictment, ECF No. 19 at 3-4. Plea Agrm't, ECF No. 71 at 1-2.

On November 2, 2012, Teehan supervised the CI during the controlled purchase of 100 ecstasy pills from one of Traxel's associates. There is no mention of Frye in the incident report related to this controlled buy. Rep't of Investigation prepared by Keith Teehan, ECF No. 142-5. Count 9 was based on this buy and was dismissed as part of the plea agreement. Indictment, ECF No. 19 at 4; Plea Agrm't, ECF No. 71 at 1-2.

On December 21, 2012, Agent Cilento swore out a complaint against Traxel and Traxel was arrested on December 27, 2012. ECF No. 1, 3. On January 24, 2013, Traxel was indicted on the drug and firearm counts. On January 23, 2013, the day before his arrest, Traxel met with ATF officers in Roanoke for a proffer-style interview with counsel and Assistant United States Attorney Donald Wolthuis present. Agents Frye and Teehan conducted the interview. Traxel gave details about his and others' drug activities and explained how he had come to possess the firearm. Mot., ECF No. 131 at 5.

On January 31, 2013, Traxel again met at the ATF office to give another proffer. Counsel for Traxel was present, as were Wolthuis, and agents Frye, Teehan, and Cunningham. Traxel provided more information about his and others' drug activities.

On May 30, 2013, Traxel again met with his own counsel and Wolthuis. It is unknown which agents participated in the interview. Traxel provided more information about drug activities.

Traxel argues that he should be allowed to withdraw his guilty plea on all the charges because had he known about Frye's credibility issues, he would have challenged the controlled

6

buys of guns and drugs that were the centerpiece of the case against him. He asserts that he did not look behind the reports that detailed Frye's involvement because he assumed that Frye was a professional law enforcement officer committed to even-handedly enforcing the law. Traxel does not describe any particular actions taken by Frye in the investigation of his case and asserts only that he would have challenged Frye's credibility.

## II. DISCUSSION

### A. 28 U.S.C. § 2255

To state a viable claim for relief under § 2255, a petitioner must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States;" (2) that "the court was without jurisdiction to impose such a sentence;" or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). If a petition alleges a sentencing error that is neither constitutional nor jurisdictional, "a district court lacks authority to review it unless it amounts to a fundamental defect which inherently results in a complete miscarriage of justice." United States v. Foote, 784 F.3d 931, 936 (4th Cir. 2015) (quoting Davis v. United States, 417 U.S. 333, 346 (1974)). A petitioner collaterally attacking his conviction or sentence via a § 2255 petition bears the burden of showing by a preponderance of evidence that he is entitled to relief. White v. United States, 352 F.Supp.2d 684, 687 (E.D. Va. 2004) (citing Miller v. United States, 261 F.2d 546 (4th Cir. 1958), and Vanater v. Boles, 377 F.2d 898, 900 (4th Cir. 1967)).

### B. Standard of Review

"The Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure, to the extent that they are not inconsistent with any statutory provisions, or the [§ 2255 Rules],

7

may be applied to" § 2255 proceedings. Rules Governing Section 2255 Proceedings, Rule 12. The court may dismiss a § 2255 motion without a hearing when the motion, any attached exhibits, and the record of prior proceedings conclusively show that the moving party is not entitled to relief. United States v. Renrick, No. 6:11-CR-00338-JMC-16, 2019 WL 4140934, *2 (D.S.C. Aug. 30, 2019) (citing 28 U.S.C. § 2255(b)).

"When the district court denies § 2255 relief without an evidentiary hearing, the nature of the court's ruling is akin to a ruling on a motion for summary judgment." United States v. Poindexter, 492 F.3d 263, 267 (4th Cir. 2007). The court does not weigh the evidence but reviews the facts in the light most favorable to the petitioner and determines whether there is a genuine issue of fact. Lewis v. United States, No. 4:12-CR-00068-FL-2, 2015 WL 2401514, at *3 (E.D.N.C. May 20, 2015) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). "Permissible inferences must still be within the range of reasonable probability, ... and it is the duty of the court to [grant summary judgment] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Id. (citing Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted)).

## C. Guilty Plea

"[A] guilty plea is a grave and solemn act to be accepted only with care and discernment." Brady v. United States, 397 U.S. 742, 748 (1970). Because guilty pleas waive the constitutional right to a trial, they "not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." Id. "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to

8

the defendant.'" Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)). Thus, to withdraw a guilty plea as involuntary, a defendant must show "(1) 'some egregiously impermissible conduct (say, threats, blatant misrepresentations, or untoward blandishments by government agents) antedated the entry of his plea' and (2) 'the misconduct influenced his decision to plead guilty or, put another way, that it was material to that choice.'" United States v. Fisher, 711 F.3d 460, 465 (4th Cir. 2013) (quoting Ferrara v. United States, 456 F.3d 278, 290 (1st Cir. 2006)).

**(1) Impermissible Conduct**

Traxel has not provided any link between Frye's claimed undisclosed misconduct and the drug and firearm charge to which Traxel pled guilty. Without doing so, he cannot show that he is entitled to relief. See, e.g., Lewis, 2015 WL 2401514 at *8-9 (denying defendant's motion where an officer's falsification of an affidavit in a different case lacked any connection to the defendant's case).

In United States v. Robinson, 627 F.3d 941, 949 (4th Cir. 2010), a defendant was tried and later discovered that officers who testified in his trial had engaged in misconduct in other trials. The defendant argued that he was entitled to a new trial, but the court denied relief, reasoning that "the officers' misconduct, while serious, did not relate to Robinson's case or to the truth-finding function of the criminal proceeding. We thus reiterate our reluctance to order retrials because of subsequently discovered impeachment evidence." See also Runyon v. United States, 228 F.Supp.3d 569, 590-592 (E.D. Va. Jan. 19, 2017), appeal filed No. 17-5 (4th Cir. Aug. 21, 2017) (finding petitioner failed to state a claim for ineffective assistance of counsel when he alleged that his attorney hired an investigator who later was found to have

9

engaged in a bribery scheme because petitioner could only theorize that the investigator may have filed a false report or taken a bribe, but could show no evidence of dishonesty in his own case); and Basham v. United States, 109 F.Supp.3d 753, 863-864 (D.S.C. 2013) (finding that newly discovered evidence that showed that sheriff who testified against defendant was later convicted of corruption and obstruction of justice did not serve as basis for new trial where sheriff was one of eighty-nine witnesses who testified against defendant, his testimony was not critical to the prosecution, and the other evidence against the defendant was overwhelming).

In Traxel's case, he argues that because Frye gave false answers to Giglio questions prior to his deception being discovered in 2017, he "[s]urely was asked the same Giglio questions before April 2017 and presumably gave the same false answers—something discovery in this case should reveal." ECF No. 131 at 10-11. However, this assertion is mere speculation and insufficient to state a claim for relief under § 2255. See Smith v. United States, No. 5:15-CR-51-BR, No. 5:18-CV-499-BR, 2020 WL 1865852, *1 (E.D.N.C. 2020) (citing Houck v. Substituted Tr. Servs., Inc., 791 F.3d 473, 484 (4th Cir. 2015)) (noting that to survive a motion to dismiss, petitioner must raise a right to relief above the speculative level); and Uzenski v. United States, No. 4:02-CR-26-H, 2008 WL 11422585 (E.D.N.C. 2008) (dismissing § 2255 claim as speculative after noting that "[a]lthough petitioner argues that the evidence may have been tampered with, there is no indication that any tampering actually occurred.")

Traxel points to no action taken by Frye that could be described as "impermissible conduct" as contemplated by Fisher. In that case, an officer gave false testimony in support of a search warrant. During the ensuing search, officers discovered the evidence that formed the basis of the charge against the defendant. The district court acknowledged that if the

10

defendant had known of the officer's false testimony and had challenged the search, "there likely would have been no prosecution at all." Fisher, 711 F.3d at 467. The court described the officer's conduct as "gross police misconduct [which] goes to the heart of the prosecution's case." Id. at 466.

Nothing similar happened in Traxel's case. Traxel does not allege that Frye gave false testimony or made a false report. Frye did not make "unfulfilled or unfulfillable promises" to induce a guilty plea. Fisher, 711 F.3d at 465 (quoting Brady, 397 U.S. at 755). Nor did he make plain and inexcusable misrepresentations not anchored to any permissible litigation strategy. Id. (citing Ferrara, 456 F.3d at 293). Nor did he threaten, promise to discontinue improper harassment, misrepresent the circumstances, or bribe Traxel to induce his plea. See Brady, 397 U.S. at 755. Traxel described no action by Frye that could be described as "egregious," "extraordinary," or "highly uncommon" misconduct that goes "to the heart of the prosecution's case." Fisher, 711 F.3d at 466. Accordingly, because Traxel points to no actions taken by Frye that could be described as inexcusable conduct, he cannot satisfy the first part of the test for showing that his plea was involuntary.

**(2) Materiality**

Even if Traxel could identify impermissible conduct that satisfied the first prong of Fisher, the court finds that Frye's conduct was not material to Traxel's decision to plead guilty. To meet the materiality prong, a defendant must show "a reasonable probability that, but for the misconduct, he would not have pleaded guilty and would have insisted on going to trial." Fisher, 711 F.3d at 467 (quoting Ferrara, 456 F.3d at 294). But a defendant may not satisfy this

11

prong merely by stating that his decision would have been different. Rather, courts are to employ an "objective approach to determining reasonable probability." Id.

A defendant's decision to plead guilty is often "heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted." Id. at 466. Frye's involvement in the investigation that led to two of the three counts to which Traxel pled guilty was limited to searching the CI's vehicle and equipping the CI with a wireless transmitter. After the transaction, Frye recovered the transmitter and digital recorders from the CI and searched him with negative results. During the transaction, the CI was supervised by Agent Teehan and Teehan was assisted by seven agents in addition to Frye. The exchange was monitored by all the participating law enforcement officers both visually and via the transmitter. In addition, audio recordings of the transaction were made. Thus, if Traxel had known about Frye's misconduct in other cases and believed he could challenge it at trial, he still faced the testimony of seven other law enforcement officers and a digital recording of the transaction involving the GHB and firearm.

Traxel faced a minimum sentence of 346 months and a maximum term of life had he gone to trial and been convicted on all counts. PSR, ECF No. 125 at ¶¶ 51-53. Entering into the plea agreement led to a sentence of 120 months. Given the other evidence against him and the lengthy sentence he faced had he gone to trial, the court does not find that it is objectively reasonable to conclude that had Traxel known of Frye's misconduct that he would have chosen to go to trial rather than plead guilty.

**D. Evidentiary Hearing**

Finally, although Traxel did not request an evidentiary hearing, the court has examined the record and concluded that Traxel has not alleged facts to indicate the necessity for an evidentiary hearing. See 28 U.S.C. § 2255(b) (providing that a court need not grant a hearing on a § 2255 motion if the "motion and the files and records of the case conclusively show that the prisoner is entitled to no relief"); see also Jones v. Polk, 401 F.3d 257, 269 (4th Cir. 2005) (quoting Fullwood v. Lee, 290 F.3d 663, 681 & n. 7 (4th Cir. 2002)) ("[A] federal habeas court 'is permitted to hold [an evidentiary] hearing only if the petitioner alleges additional facts that, if true, would entitle him to relief.' . . . Thus, an evidentiary hearing is an instrument to test the truth of facts already alleged in the habeas petition.")

### III. CONCLUSION

Finding that the allegations in Traxel's complaint, taken in the light most favorable to him, do not warrant withdrawal of his guilty plea, the court **GRANTS** the government's motion to dismiss, ECF No. 142, and **DISMISSES** Traxel's § 2255 petition, ECF No. 131. Because Traxel has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c) and Slack v. McDaniel, 529 U.S. 473, 484 (2000), a certificate of appealability is **DENIED**.

An appropriate order will be entered.

Entered: June 30, 2020

Michael F. Urbanski
Chief United States District Judge

13